## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ALIXPARTNERS, LLP**,

            Plaintiff,

                                                No. 14-CV-14942
vs.                                             Hon. Gerald E. Rosen
                                                Magistrate Judge David R. Grand

**CHARLES BREWINGTON**,

            Defendant.

_____/

## AMENDED OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[i]

### I. INTRODUCTION

On December 30, 2014, Plaintiff AlixPartners LLP, a global consulting and business advisory firm organized under the laws of the state of Delaware,[1] filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 against Defendant Charles Brewington, a Texas resident and former employee of Plaintiff.   The

_____

[1] Plaintiff has not explicitly alleged its principal place of business.  Defendant asserts in its Motion to Dismiss that Plaintiff's "headquarters are in New York City," based on information provided on Plaintiff's website. Plaintiff however, asserts that its "founding office" is located in Southfield, Michigan.  Though it is not critical to the ultimate determination of this Motion, the Court notes that in a recent 2014 action involving Plaintiff, Plaintiff alleged its principal place of business as Southfield, Michigan.  *See* Pl.'s Compl., ¶ 2, *AlixPartners, LLP v. Thompson*, No. 9523-VCP (Del. Ch. 2014).

1

action was precipitated by Defendant's demand for class action arbitration against Plaintiff based on allegations of Plaintiff's racial discrimination, which Defendant filed with the American Arbitration Association ("AAA") on November 24, 2014. Plaintiff claims that the arbitration clause in its employment agreement with Defendant made no mention of a right to pursue an arbitration claim on behalf of a class, and accordingly Plaintiff seeks an order precluding Defendant from pursuing its claim via arbitration.   Currently before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction, improper venue, and, alternatively, for change of venue.  Dkt # 7.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the parties' motions "on the briefs." *See* L.R. 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Defendant was hired by Plaintiff in April 2013 as a recruiter for Plaintiff's Dallas, Texas office.  As part of his hiring, Defendant signed an Employment Agreement which, as relevant here, required legal actions relating to any

2

termination of his employment to be brought before the American Arbitration Association ("AAA"), rather than a state or federal court, for resolution. The relevant portion of the Agreement reads:

> Except for any action by the Company seeking any injunctive relief or other equitable relief against you, any dispute arising out of or in connection with any aspect of this Agreement and/or any termination of employment thereunder (including by way of example but not limitation, disputes concerning alleged civil rights violations, employment discrimination of any kind including on the basis of any protected category under federal or state law, retaliation, wrongful discharge, entitlement to overtime pay, sexual harassment, breach of express or implied contract or tort), shall be exclusively subject to binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"), provided all substantive rights and remedies including any applicable damages provided under any pertinent statute(s) related to such claims, the right to representation by counsel, a neutral arbitrator, a reasonable opportunity for discovery, a fair arbitral hearing, a written arbitral award containing findings of facts and conclusions of law, and any other provision required by law, shall be available in the AAA forum. Any decision of the arbitrator shall be final and binding as to both parties, and enforceable by any court of competent jurisdiction. Nothing contained herein shall prohibit you from filing any claim or charge with any appropriate governmental agency. You hereby waive your right to adjudicate claims against the Company in court and opt instead to arbitrate any such claims.

Employment Agreement, Dkt. # 9, Ex. A, at 4. At the time of Defendant's hiring, both parties signed the Agreement without dispute.

As relevant here, Defendant's hiring occurred between Plaintiff's Southfield, Michigan office and Defendant's Texas residence. Defendant alleges, and Plaintiff does not appear to dispute, that Defendant's three in-person pre-employment

interviews were conducted by Plaintiff's employees in its Dallas office. Brewington Decl., Dkt. # 7-1, ¶ 2 (describing interviews with Joel Bines, Jay Marshall, and Caralyn Markets).   However, Plaintiff notes that, as part of the evaluation process, Defendant spoke on the telephone with Dr. Leslie Evola, an AlixPartners employee located in Michigan, who then prepared a summary report of Defendant's interviews.   Severson Decl., Dkt. # 9-1, ¶ 8.   Following the successful completion of the interview process, Defendant signed the Employment Agreement in Texas, and sent it to Plaintiff's offices in Michigan, where it was received and processed by Plaintiff's human resources department.   *Id.* ¶¶ 9-11.[2] In addition to the arbitration provision quoted above, the Employment Agreement signed by Defendant also contained a Michigan choice-of-law provision, stating that "the Agreement and its performance [is to] be construed and interpreted in accordance with the law of the State of Michigan."  Employment Agreement, at 4.

After being hired and completing his employment paperwork, Defendant began work on April 15, 2013.  Brewington Decl., Dkt. # 7-1, ¶ 3.  On April 22 and 23, 2013, Defendant attended a mandatory orientation session in Plaintiff's Michigan office, along with several other new employees.  Orientation e-mail, Dkt. # 9-1; Brewington Decl., ¶ 3.  Defendant then returned to Texas and worked full-time from Plaintiff's Dallas office.  Brewington Decl., ¶ 3.  While working in the

---

[2] Defendant's personnel file remains housed in Plaintiff's Michigan office.  *Id.* ¶ 12.

Dallas office, however, Defendant maintained substantial connection to Plaintiff's Michigan office.  Defendant was assigned primarily to recruit for Plaintiff's Financial Advisory Services ("FAS") group.  Diefenbacher Decl., ¶ 5.  As part of his duties, he worked directly with Patricia Diefenbacher, Director of Human Resources for AlixPartners, who worked in the Michigan office.  *Id.* ¶¶ 2, 5. Defendant communicated with Diefenbacher "on many occasions" via both e-mail and telephone as Defendant recruited employees for various AlixPartners offices.

Defendant also worked with Ray Kantor, Plaintiff's Internal Audit Director, who also works in the Michigan office.  Kantor Decl. ¶ 2-3.  According to Kantor, "Brewington actively worked to recruit candidates to fill internal audit positions for which I have responsibility as Internal Audit Director in AlixPartners' Southfield, Michigan office."  *Id.* ¶ 3.[3]  A September 6, 2013 e-mail sent by Defendant to Kantor provides substantial evidence for this statement.  In the e-mail, Defendant provided for Kantor a list of six individuals that Defendant had identified for Plaintiff's "Detroit Internal Audit Manager" position.  September 6,

---

[3] Defendant appears to contest this.  He asserts that he "never recruited employees for positions in Detroit" and that his recruiting "tended to involve four cities— Chicago, New York City, Los Angeles, and Dallas."  Brewington Decl., Dkt. # 7-1, ¶ 4.  The record, however, clearly belies this assertion, as Plaintiff has produced e-mail documentation of Defendant's work in recruiting the city of Detroit.  But regardless of this, on a motion to dismiss for lack of personal jurisdiction, the Court "must review the pleadings and affidavits in the light most favorable to Plaintiff[], without considering the 'controverting' assertions of the Defendant[]." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

2013 e-mail, Dkt. # 9-2, Ex. A.   Defendant further stated, "In addition, I've reached out to an additional 55+ Audit Staff, Seniors, and light Managers in the Detroit Metro area and will continue networking with them based on their availability to connect . . . I'm on vacation today, however the activity will continue once I return next week."  *Id.*  In a November 18, 2013 follow-up e-mail from Defendant to Kantor, Defendant stated, "I believe we're making strides in the Detroit Internal Audit Manager search . . . I believe I've connected with close to 50% of the Detroit Audit Big 4 population . . . I'll continue networking with the Detroit/Southfield market."  November 18, 2013 e-mail, Dkt. #9-3, Ex. A.  All of the e-mail servers that were used by Defendant in sending these e-mails were located in Plaintiff's Michigan office.  Gruber Decl., Dkt. # 9-4, ¶ 3.

After about a year of employment with Plaintiff, Defendant was terminated in March 2014.  The parties disagree as to the reasons for the termination.  Plaintiff maintains that the termination was due to repeated "deficiencies in [Defendant's] performance."  Pl.'s Mot. for Summary Judgment, Dkt. # 11, at 2 n.1.  Defendant, however, alleges that the termination was racially motivated and unlawful.  Accordingly, Defendant filed a demand for arbitration with the AAA alleging claims of racial discrimination under Title VII.  Critically, however, Defendant did not file the demand on behalf of only himself, but rather, as Plaintiff described the demand, "on behalf of himself and a purported, nation-wide class of current,

6

former, and potential AlixPartners employees in various positions and circumstances." *Id.* at 3.

In response, Plaintiff filed this declaratory judgment action, asserting that it "is entitled to a declaration that, as a matter of law under the Federal Arbitration Act, the parties' Agreement, and the controlling precedent of this circuit, [Defendant] is precluded from pursuing claims in arbitration on behalf of any absent individual or purported class, whether in the AAA arbitration already filed or in any other arbitration forum, because AlixPartners did not agree to, and the parties' Agreement does not authorize, the arbitration of disputes on a class basis." Pl.'s Compl., Dkt. # 1, ¶ 28.

Defendant subsequently filed this Motion to Dismiss (Dkt. # 7), asserting that (1) the Court lacks personal jurisdiction over Defendant, (2) the Eastern District of Michigan is not the proper venue for this action, and (3) in the alternative, the Court should transfer the case to another district pursuant to 28 U.S.C. § 1404(a).  The Court addresses each argument below.

## III. DISCUSSION

### A.    Rule 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiff has the burden of establishing that the exercise of

7

jurisdiction over the defendant is proper. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where, as here, there has been no evidentiary hearing regarding personal jurisdiction, a plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)) (internal quotation marks omitted). However, it is insufficient for a plaintiff to merely reassert the allegations contained in its pleadings. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must articulate specific facts to show that the court has jurisdiction. *Id.* The court must then consider all of the facts presented in the pleadings and affidavits in a light most favorable to the plaintiff, and does not weigh any contrary assertions offered by the defendant. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005).

In federal question cases where the law at issue does not contain a nationwide service of process provision, the court must follow Rule 4(k) of the Federal Rules of Civil Procedure, which "limits a court's exercise of personal jurisdiction to persons who can be reached by the forum state's long-arm statute." *Alisoglu v. Cent. States Thermo King of Oklahoma, Inc.*, No. 12-CV-10230, 2012 WL 1666426, at *3 (E.D. Mich. May 11, 2012) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987)). Accordingly, the Court's analysis here proceeds as it would in a diversity case, assessing personal jurisdiction under both

8

Michigan's long-arm statute and the Due Process Clause of the Fourteenth Amendment. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" (alterations in original) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992))).

**B.     The Court Has Personal Jurisdiction Over Defendant Under Michigan's Long-Arm Statute and the Due Process Clause of the Fourteenth Amendment**

Michigan's long-arm statute provides for both "limited" jurisdiction over individuals pursuant to M.C.L. § 600.705 and "general" jurisdiction over individuals pursuant to M.C.L. § 600.701.[4]  Plaintiff does not allege that Defendant is subject to general jurisdiction in Michigan, and therefore the Court considers only limited jurisdiction here.   As § 600.705 provides, limited jurisdiction in Michigan is very broad.

---

[4] As explained by the Sixth Circuit, "[l]imited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is related to its activities in the state or has an in-state effect." *Neogen*, 282 F.3d at 888 (citation omitted).

The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

M.C.L. § 600.705. Though it appears clear that Defendant's actions satisfy the statute,[5] the Court need not even delve into the inquiry, as the Michigan Supreme

---

[5] Michigan's long-arm statute has been uniformly interpreted to cast an extremely wide net. For example, "the transaction of any business within the state" necessary to satisfy subsection (1) is established by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)

Court has construed Michigan's limited jurisdiction statute with respect to individuals "as extending the state's jurisdiction to the farthest limits permitted by due process." *Sifers v. Horen*, 188 N.W.2d 623, 623-24 (Mich. 1971). And "when a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge and the court 'need only determine whether the assertion of personal jurisdiction . . . violates constitutional due process.'" *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998) (emphasis in original) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). Accordingly, the Court proceeds directly to the constitutional analysis.

In order to determine whether a court has specific jurisdiction over a nonresident defendant, a court must "focus[] on the 'relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). As the Supreme Court has reiterated for nearly three-quarters of a century, this inquiry centers on the Due Process Clause's requirement that a defendant have "certain minimum contacts" with the forum state such that the defendant being haled into court in the forum state does not offend "traditional notions of fair play and

---

(citing *Sifers*, 188 N.W.2d at 624 n.2); *see also Neogen*, 282 F.3d at 888. "The word 'any' means just what it says. It includes 'each' and 'every' . . . It comprehends the 'slightest.'" *Lanier*, 843 F.2d at 906 (quoting *Sifers*, 188 N.W.2d at 624 n.2).

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (internal quotation marks omitted); *see also Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121-24 (2014). Though there is no exact formula for determining whether such minimum contacts are present, *see S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (describing the standard as "hardly a precise and definitive" one), there is no shortage of pages in the United States Reports dedicated to articulating the standard. Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 297 (1980). Further, it is necessary that the defendant "purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation mark omitted). Most recently, the *Walden* Court emphasized that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and not "contacts between the plaintiff (or third parties) and the forum State," no matter how substantial. *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).

The Sixth Circuit has partitioned the minimum contacts analysis into a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach.*, 401 F.2d at 381. "The test must never be applied mechanically, however, . . . [and] the facts of each individual case must always be weighed in determining whether an exercise of personal jurisdiction would comport with fair play and substantial justice." *Int'l Technologies Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 395 (6th Cir. 1997).

## 1. Defendant Purposefully Availed Himself of the Privilege of Acting in Michigan

"'[P]urposeful availment' is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *S. Mach.*, 401 F.2d at 381 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)) (internal quotation marks omitted). The connections between the defendant and the forum state must be "more than

13

'random, fortuitous, or attenuated.'" *Id.* at 892 (quoting *Burger King*, 471 U.S. at 475).  When the defendant has "engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he manifestly has availed conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476 (internal quotation marks omitted).

Because the purposeful availment test is admittedly murky, the best approach is often to compare and contrast the facts of the case with that of factually similar cases, always recognizing that the particular circumstances of each case is unique.  Here, several in-circuit cases provide an indication that Defendant's conduct constitutes purposeful availment in Michigan.  First, in *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940 (E.D. Mich. 2008), the plaintiff, a Delaware corporation with its principal place of business in Michigan, hired the defendant, a Minnesota resident, to perform legal staffing services for the plaintiff in Minnesota markets.  *Id.* at 944-45.  As part of her hiring, the defendant signed an agreement that prohibited her from using trade secrets possessed by plaintiff in any subsequent employment.  *Id.* at 945.  When the defendant quit her job and began working for a direct competitor, the plaintiff brought suit, alleging a violation of Michigan's Uniform Trade Secrets Act, M.C.L. § 445.1901 *et seq.*  *Id.*  The

14

defendant moved to dismiss the case for lack of personal jurisdiction, arguing that "she is a resident of Minnesota and has come to Michigan once, for a training session entirely unrelated to her job with [the plaintiff]." *Id.* at 946. The court found that personal jurisdiction over the defendant was present, noting that the defendant "accessed a Michigan-based computer server and database networks as part of her job responsibilities" and that "as evidence by the e-mails and phone logs produced by plaintiff . . . [the defendant] had at least semi-regular contact with Michigan-based supervisors during the course of her employment with [the plaintiff]. *Id.*

Also instructive is *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 843 (E.D. Mich. 1994). Like *Eidnes*, that case also involved a corporate plaintiff based in Michigan. *Id.* at 841. The defendant, a Texas resident, worked in the plaintiff's Dallas office, and signed a non-compete agreement as well as an agreement limiting him from disclosing any confidential or proprietary information he acquired during the course of his employment. *Id.* at 842. The defendant eventually left his job to work with competitor Ernst & Young, and the plaintiff subsequently filed suit in the Eastern District of Michigan, alleging breach of contract. *Id.* at 843. In finding that the defendant had purposefully availed himself of the forum state, the court noted that the defendant had made trips to Michigan as part of his employment and maintained "contact with the Michigan office via

telephone, voice mail, telefax, mail, and e-mail." *Id.* at 844. Likewise, the defendant had initially executed his employment contract both "in Michigan, as well as by mail and phone calls from Texas to Michigan." *Id.* at 843. Further, the court found relevant that the defendant had "performed work for a Michigan client on at least one occasion" and that the employment contract contained a Michigan choice-of-law provision, which "should not be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's law' for jurisdictional purposes." *Id.* at 844 (quoting Burger King, 471 U.S. at 482) (internal quotation marks omitted).[6]

Last, in *Santa Rosa Consulting, LLC v. Arredondo*, No. 09-CV-13368, 2009 WL 5171837 (E.D. Mich. Dec. 22, 2009), a Michigan corporation likewise sued a former employee who was a Texas resident, alleging a breach of the employment contract that the two had reached. *Id.* at *1-2. As in *Eidnes* and *Walling*, the court found that the purposeful availment prong was satisfied because the defendant's contract negotiations occurred both in Michigan and "via telephone and e-mail," the defendant had traveled to Michigan once after beginning his employment to

---

[6] Though not discussed by the parties, it is worth mentioning that the *Walling* court specifically noted that actions performed by employees on behalf of their employers can be considered for personal jurisdiction purposes. *Id.* at 845; *see also Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) ("[T]he mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants.").

16

make a sales presentation on behalf of the plaintiff, the defendant had frequent telephone and e-mail contact with the plaintiff in its Michigan office, and the defendant's e-mails were housed on servers located in Michigan. *Id.* at *4.

The instant case, though not identical to *Eidnes*, *Walling*, or *Arredondo*, is strikingly similar. As in all three cases, Defendant here "had at least semi-regular contact with Michigan-based supervisors during the course of [his] employment" with Plaintiff. *Eidnes*, 530 F. Supp. 2d at 947. As in *Arredondo*, Defendant here made e-mail and telephone contact with Plaintiff's Michigan office to secure his contract and employment, important considerations despite the fact that Defendant was not physically present in Michigan when he signed the contract. *See Burger King*, 471 U.S. at 476 ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State . . . it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."). As in *Walling*, that contract contained a Michigan choice-of-law provision, implying purposeful availment of the state's legal protections. As in *Eidnes*, Defendant attended a training session in Michigan in order to begin his employment. As in *Walling*, Defendant conducted work for Michigan clients by

17

recruiting Michigan candidates for Plaintiff's "Detroit Internal Audit Manager" position.  And as in *Eidnes* and *Arredondo*, Defendant sent and received e-mails contained on servers located entirely in Michigan.  At bottom, Defendant's contract and job duties appeared to "envision[] continuing and wide-reaching contacts" between himself and Michigan through his employment with Plaintiff. *Burger King*, 471 U.S. at 480.  Put together, each of these facts indicates that Defendant established connections with Michigan and availed himself of the forum.[7]

### 2.  The Action Arises from Defendant's Contacts with Michigan

Next, given that the Court has found that Defendant has purposefully availed himself of the forum state, the Court must examine whether the action in the instant case arises from the connections constituting purposeful availment.  "The

---

[7] Defendant, in rejecting the similarity of this case to *Eidnes*, *Walling*, and *Arredondo*, relies heavily on *Aysling, L.L.C. v. Mejia*, No. 13-13027, 2014 WL 545816 (E.D. Mich. Feb. 11, 2014), another case involving an employer bringing suit against a former employee for violation of a non-compete agreement. *Id.* at *1.  There are several distinctions that limit the applicability of that case here. First, it analyzed personal jurisdiction only based on Michigan's long-arm statute, without even reaching the Due Process Clause "minimum contacts" test. *Id.* at *1-3.  But more importantly, the defendant in that case never voluntarily entered into employment with any company with ties to Michigan; he worked in Florida for a Florida company that was eventually acquired by the plaintiff. *Id.* at *1.  The defendant was then required by the plaintiff to perform work in Michigan. *Id.* While the defendant signed an employment agreement with the plaintiff when it acquired the defendant's original employer, the court found that the agreement was signed under duress, and accordingly was unenforceable and could not be considered in the personal jurisdiction analysis. *Id.* at *1, 3.

only requirement is that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *S. Mach.*, 401 F.2d at 384; *see also Third Nat. Bank in Nashville v. WEDGE Grp. Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (describing qualifying facts as those that have a "close relationship" with the action).  Here, the action is a declaratory judgment action seeking to determine the rights granted under the employment contract between the parties. Accordingly, facts such as Defendant's returning of contract documentation to Michigan, communicating regularly with Plaintiff in Michigan, agreeing to a Michigan choice-of-law provision, and participating in an orientation session in Michigan that was directly related to the start of his employment are all clearly connected to the issues raised in the action. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a [forum state] resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in [the forum state].  Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state].").  Other facts, such as Defendant's consistent communications with Plaintiff's Michigan office, though not as directly related, are still part of his decision to connect himself with the forum.

19

Defendant maintains that, because Plaintiff has not clearly established that its principal place of business is in Michigan, it cannot show that Defendant's conduct in Michigan is sufficiently related to the action. This does not follow. Defendant fails to cite any such requirement, and the Court is not aware of any case describing one. Indeed, as the Supreme Court has recently reiterated, the touchstone of personal jurisdiction under the Due Process Clause is that it "looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. Regardless of Plaintiff's status as a forum resident, Defendant's actions established connections with Michigan, and those connections gave rise to this action.

### 3. The Exercise of Jurisdiction Over Defendant is Reasonable

Last, under the third requirement of the *Southern Machine* test, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant *reasonable*." *S. Mach.*, 401 F.2d at 381. "This requirement exists because minimum requirements inherent in the concept of fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554 (6th Cir. 2007) (quoting Burger King, 471 U.S. at 477-78) (internal quotation marks omitted). "[W]here, as here, the first two

20

criteri[a] are met, 'an inference of reasonableness arises' and 'only the unusual case will not meet this third criteri[on].'" *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991)).  Several factors are often considered, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Id.* at 554-55.

The Court does not find any of these factors overwhelming in this case. Defendant asserts that the burden placed on him by litigating this case in Michigan is high, and opines that Plaintiff "has essentially usurped Brewington's choice to litigate this employment dispute in Dallas by filing this declaratory judgment action in Michigan." Def.'s Mot. to Dismiss, Dkt # 7, at 9.  But Plaintiff here does not seek to usurp Defendant's choice of forum on the merits of its underlying discrimination claim; rather it seeks to resolve a potentially "gateway" arbitration issue, "such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy," *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); the type of dispute that is typically resolved through a declaratory judgment action.  *See Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) ("[T]he question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless

21

the parties clearly and unmistakably provide otherwise.'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).  Regardless of the outcome of this action, Defendant will still have the chance to litigate the merits of his claim in his forum of choice, either through arbitration or alternatively a separate court action (should this Court eventually find that the parties' Agreement does not allow for classwide arbitration).[8]  While this Court may not be the most convenient forum for Defendant, it is a reasonable one given that the contract was formed, and partly carried out, in Michigan.  Accordingly, the Court does not find that the usual inference of reasonableness has been overcome by any factors raised by the parties.

## C.    Venue in the Eastern District of Michigan is Appropriate

Next, Defendant asserts that venue is improper in the Eastern District of Michigan, primarily because "the declaratory judgment sought by Alix relates to what Brewington may or may not allege in an employment discrimination case pending before the AAA with a hearing scheduled for Dallas."  Def.'s Mot. to Dismiss, at 10.

Venue in federal question cases is governed by 28 U.S.C. § 1391(b).  Under that statute,

A civil action may be brought in--

---

[8] Whether the classwide arbitration is available under the parties' agreement and, alternatively, whether that question must be answered by the arbitrator herself, are questions raised in a separate Motion for Summary Judgment brought by Plaintiff. Dkt. # 11.  The Court will rule separately on that Motion.

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue is determined "at the commencement of an action." *Sullivan v. Tribley*, 602 F. Supp. 2d 795, 799 (E.D. Mich. 2009). Plaintiff bears the initial burden of establishing venue. *Kepler v. ITT Sheraton Corp.*, 860 F. Supp. 393, 396 (E.D. Mich. 1994). Upon this showing, the burden shifts to the defendant to "establish[] that venue is improper." *Eidnes*, 530 F. Supp. 2d at 948.

While Defendant may be correct that "a substantial part of the events or omissions giving rise to" Defendant's *employment discrimination allegations* occurred in Texas, the substance of those allegations is not a part of the declaratory judgment action here. Instead, this declaratory judgment action solely involves "the question of whether the parties agreed to arbitrate" any class action employment claims. *AT & T Technologies, Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986). The events giving rise to Defendant's employment discrimination claim, which are not even discussed in the parties' briefings or supporting documents, are wholly irrelevant to the resolution of that question, and

23

indeed, this Court would likely *not* be the proper venue for those claims.   But

because of the connections between *the formation, execution, and enforcement of*

*the contract* and this District, the Court finds that "a substantial part of the events

or omissions giving rise to the claim" did occur in this District, as discussed above

regarding personal jurisdiction.   Accordingly, the Court finds that venue in this

District, pursuant to 28 U.S.C. § 1391, is proper.

**D.      Transfer of the Case is Not Warranted**

Last, Defendant requests that, even if the Court has personal jurisdiction

over him and the Eastern District of Michigan is a proper venue, the Court transfer

the case to the Northern or Eastern District of Texas, pursuant to 28 U.S.C.

§ 1404(a), which allows that "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district

or division where it might have been brought or to any district or division to which

all parties have consented."  "The statute is broadly drafted, and leaves much to the

discretion of the district court."   *Walling*, 851 F. Supp. at 845 (citing Wright,

Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3847).   In

exercising such discretion, courts in this Circuit typically rely on a number of

factors, including:

> (1)  the  convenience  of  witnesses;  (2)  the  location  of  relevant
> documents  and  relative  ease  of  access  to  sources  of  proof;  (3)  the
> convenience  of  the  parties;  (4)  the  locus  of  the  operative  facts;  (5)  the
> availability  of  process  to  compel  the  attendance  of  unwilling

24

witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*IFL Group v. World Wide Flight Services*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004).

While a plaintiff typically enjoys a measure of deference in choice of forum, the Court recognizes that plaintiffs in declaratory judgment actions sometimes do not receive the same protection with regard to § 1404(a) determinations.  In most declaratory judgment actions, the plaintiff brings the case "because it has perceived a threat of suit. Therefore, its posture before the court is more akin to a defendant than an ordinary plaintiff seeking relief."  *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 990 (S.D. Ohio 2007).  But this case does not involve the typical "race to the courthouse" scenario where the plaintiff of the declaratory judgment case seeks resolution of the identical question that the defendant of the declaratory judgment suit would have sought in its own separate action.  Instead, Plaintiff in this case seeks resolution of whether arbitration is appropriate for the Defendant's claim.  Thus, Plaintiff here did not steal the opportunity for Defendant to select the forum of the underlying action -- that underlying action will eventually be heard in the forum of Defendant's preference, as explained above.

Examining the other factors, the Court finds no compelling argument warranting transfer.  The question presented is predominantly a legal one that does not rely on facts or documents located in one forum.  If anything, the operative facts relate to the formation of the Agreement between the parties, and most of the witnesses and documents relating to that Agreement appear to be located in Michigan.   At the very least, transfer would appear to "exchange[] the inconvenience of one party for that of the other.  *Walling*, 851 F. Supp. at 845.  Last, the agreement contains a Michigan choice-of law provision, and this Court likely has greater familiarity with the governing law than would a federal court in Texas.   Accordingly, the Court finds that transfer pursuant to § 1404(a) is not warranted.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (Dkt. # 7) is **DENIED**.

**IT IS SO ORDERED.**


Dated:  September 9, 2015              s/Gerald E. Rosen_____
                                       Chief Judge, United States District Court

26

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 9, 2015, by electronic and/or ordinary mail.


s/Julie Owens

Case Manager, (313) 234-5135

---

[i] The original Opinion and Order entered on September 04, 2015  in Footnote No. 1 incorrectly included the text "See also".  This is a non-substantive correction.