UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALIXPARTNERS, LLP**,

        Plaintiff,

  vs.

**CHARLES BREWINGTON**,

        Defendant.

No. 14-CV-14942
Hon. Gerald E. Rosen
Magistrate Judge David R. Grand

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

On December 30, 2014, Plaintiff AlixPartners LLP, a global consulting and business advisory firm organized under the laws of the state of Delaware, filed this declaratory judgment action pursuant to 28 U.S.C. § 2201 against Defendant Charles Brewington, a Texas resident and former employee of Plaintiff. The action was precipitated by Defendant's demand for class action arbitration against Plaintiff based on allegations of Plaintiff's racial discrimination, which Defendant filed with the American Arbitration Association ("AAA") on November 24, 2014. Plaintiff asserts that the arbitration clause in its employment agreement with

1

Defendant made no mention of a right to pursue an arbitration claim on behalf of a class, and accordingly Plaintiff seeks an order precluding Defendant from pursuing its claim via arbitration.

The Court has previously issued one order in this matter, denying Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Dkt. # 15. With that Motion resolved, the Court now turns to Plaintiff's Motion for Summary Judgment (Dkt. # 11), which has been fully briefed. Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the parties' motions "on the briefs." *See* L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was hired by Plaintiff in April 2013 as a recruiter for Plaintiff's Dallas, Texas office. As part of his hiring, Defendant signed an Employment Agreement which, as relevant here, required legal actions relating to any termination of his employment to be brought before the American Arbitration

2

Association ("AAA"), rather than a state or federal court, for resolution. The relevant portion of the Agreement reads:

> Except for any action by the Company seeking any injunctive relief or other equitable relief against you, any dispute arising out of or in connection with any aspect of this Agreement and/or any termination of employment thereunder (including by way of example but not limitation, disputes concerning alleged civil rights violations, employment discrimination of any kind including on the basis of any protected category under federal or state law, retaliation, wrongful discharge, entitlement to overtime pay, sexual harassment, breach of express or implied contract or tort), shall be exclusively subject to binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"), provided all substantive rights and remedies including any applicable damages provided under any pertinent statute(s) related to such claims, the right to representation by counsel, a neutral arbitrator, a reasonable opportunity for discovery, a fair arbitral hearing, a written arbitral award containing findings of facts and conclusions of law, and any other provision required by law, shall be available in the AAA forum. Any decision of the arbitrator shall be final and binding as to both parties, and enforceable by any court of competent jurisdiction. Nothing contained herein shall prohibit you from filing any claim or charge with any appropriate governmental agency. You hereby waive your right to adjudicate claims against the Company in court and opt instead to arbitrate any such claims.

Employment Agreement, Dkt. # 9, Ex. A, at 4. At the time of Defendant's hiring, both parties signed the Agreement without dispute.

After about a year of employment with Plaintiff, Defendant was terminated in March 2014. The parties disagree as to the reasons for the termination. Plaintiff maintains that the termination was due to repeated "deficiencies in [Defendant's] performance." Pl.'s Mot. for Summary Judgment, Dkt. # 11, at 2 n.1. Defendant,

however, alleges that the termination was racially motivated and unlawful. Accordingly, Defendant filed a demand for arbitration with the AAA, alleging claims of racial discrimination under Title VII. Critically, however, Defendant did not file the demand on behalf of only himself, but rather, as Plaintiff described the demand, "on behalf of himself and a purported, nation-wide class of current, former, and potential AlixPartners employees in various positions and circumstances." *Id.* at 3.

In response, Plaintiff filed this declaratory judgment action, asserting that it "is entitled to a declaration that, as a matter of law under the Federal Arbitration Act, the parties' Agreement, and the controlling precedent of this circuit, [Defendant] is precluded from pursuing claims in arbitration on behalf of any absent individual or purported class, whether in the AAA arbitration already filed or in any other arbitration forum, because AlixPartners did not agree to, and the parties' Agreement does not authorize, the arbitration of disputes on a class basis." Pl.'s Compl., Dkt. # 1, ¶ 28.

Defendant previously filed a Motion to Dismiss (Dkt. # 7), asserting that (1) the Court lacks personal jurisdiction over Defendant, (2) the Eastern District of Michigan is not the proper venue for this action, and (3) in the alternative, the Court should transfer the case to another district pursuant to 28 U.S.C. § 1404(a). The Court denied Defendant's motion. Dkt. #15. Plaintiff subsequently filed a

4

Motion for Summary Judgment, asserting that the Agreement entered into between the parties is silent as to the potential for class arbitration, and accordingly does not allow for class arbitration under the law of this Circuit. Plaintiff challenges this conclusion, and further asserts that the question of class arbitrability is a question for the arbitrator, not for the Court. The Court addresses both issues below.

### III. DISCUSSION

A.   **Rule 12(b)(2) Standard**

Through its present motion, Plaintiff seeks summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under that Rule, Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In addition, where a moving party seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, this party's "showing must be sufficient for the court to

5

hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (emphasis and citation omitted).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     This Court is the Proper Body to Decide Classwide Arbitrability**

Before reaching the merits of whether the Agreement provides Defendant a right to classwide arbitration for his claims, the Court must first address a threshold question: should such a decision be made by the arbitrator herself, or by the Court? As the Supreme Court has explained, such preliminary issues of arbitrability turn on the type of question raised. "Gateway disputes," such as questions "about whether the parties are bound by a given arbitration clause" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" are questions for courts to decide, unless the parties have "clearly and

6

unmistakably provid[ed] otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002). "[P]rocedural questions," on the other hand (or "subsidiary questions," as the Sixth Circuit has termed them), "which grow out of the dispute and bear on its final disposition," are ones that must be left to the arbitrator. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964).

The natural question, then, is "whether classwide arbitrability is a gateway question or a subsidiary one." *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 597 (6th Cir. 2013) *cert. denied*, 134 S. Ct. 2291 (2014). Several Supreme Court and Sixth Circuit opinions shed light on the question. First, in *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), a fractured Court held that "the relevant question . . . is what kind of arbitration proceeding the parties agreed to," and accordingly, because "[a]rbitrators are well situated to answer that question," class arbitrability questions are a "matter of contract interpretation [that] should be for the arbitrator, not the courts, to decide." *Id.* at 452-53. Only four Justices signed on to that opinion, however, and so the question remained open to future courts. In *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, the Court addressed a similar issue, noting that "only the plurality decided that question" in *Bazzle*. 559 U.S. 662, 680 (2010). The Court in that case, however, did not need to resolve whether classwide arbitrability is a gateway matter because in that case, "the parties' supplemental agreement expressly assigned [the] issue [of classwide arbitrability] to the

7

arbitration panel, and no party argue[d] that [the] assignment was impermissible." *Id.* As the Court subsequently confirmed, "*Stolt–Nielsen* made clear that this Court has not yet decided whether the availability of class arbitration is a question of arbitrability." *Oxford Health Plans LLC v. Sutter*, ___ U.S. ___, 133 S. Ct. 2064, 2068 (2013).

The Sixth Circuit, however, has resolved the question. In *Reed Elsevier, Inc. v. Crockett*, a case involving an arbitration clause in a contract between LexisNexis and a private law firm, the court reviewed the Supreme Court caselaw, noting that "the Court has characterized the differences between bilateral and classwide arbitration as 'fundamental,'" that "'[c]onfidentiality becomes more difficult' in classwide arbitrations," that classwide arbitration has extremely high stakes, and that the benefits of arbitration are less certain in the classwide context. *Id.* at 598 (quoting *Stolt–Nielsen*, 559 U.S. at 686). For these reasons, the *Reed Elsevier* court concluded that "the Court has given every indication, short of an outright holding, that classwide arbitrability is a gateway question rather than a subsidiary one," *id.*, and accordingly plainly stated that "[w]e . . . hold that the question whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved for judicial determination unless the parties clearly and unmistakably provide otherwise." 734 F.3d at 599 (internal quotation marks omitted).

8

Accordingly, Defendant's only possible escape from *Reed Elsevier*'s reach is through the argument that the Agreement here "clearly and unmistakably" provided that class arbitrability is a question left for the arbitrator. A comparison with the arbitration agreement at issue in *Reed Elsevier* is illustrative. In that case, the arbitration clause read,

> Except as provided below, any controversy, claim or counterclaim (whether characterized as permissive or compulsory) arising out of or in connection with this Order (including any amendment or addenda thereto), whether based on contract, tort, statute, or other legal theory (including but not limited to any claim of fraud or misrepresentation) will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the American Arbitration Association ("AAA").

*Id.* Based on that contract language, the Court reasoned as follows:

> This language does not clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration. Instead it does not mention classwide arbitration at all. It is true that the clause provides that "any controversy . . . arising out of or in connection with this Order" shall be resolved by binding arbitration; and one might argue that the question whether an arbitrator should decide classwide arbitrability is a "controversy . . . arising . . . in connection with" Crockett's order. That, indeed, was the interpretation that the plurality gave to analogous language in *Bazzle*. But given the total absence of any reference to classwide arbitration in this clause, the agreement here can just as easily be read to speak only to issues related to bilateral arbitration. Thus, at best, the agreement is silent or ambiguous as to whether an arbitrator should determine the question of classwide arbitrability; and that is not enough to wrest that decision from the courts.

*Id.* (alterations in original) (citations omitted).

9

The same analysis applies here.  The relevant text of the Agreement here is virtually indistinguishable from that of *Reed Elsevier*.  It reads,

> . . . any dispute arising out of or in connection with any aspect of this Agreement and/or any termination of employment thereunder (including by way of example but not limitation, disputes concerning alleged civil rights violations, employment discrimination of any kind including on the basis of any protected category under federal or state law, retaliation, wrongful discharge, entitlement to overtime pay, sexual harassment, breach of express or implied contract or tort), shall be exclusively subject to binding arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") . . . .

Employment Agreement, Dkt. # 9, Ex. A, at 4.  Just as in *Reed Elsevier*, the language "does not clearly and unmistakably assign to an arbitrator the question whether the agreement permits classwide arbitration.  Instead it does not mention classwide arbitration at all."  *Reed Elsevier*, 734 F.3d at 599.  Defendant focuses on the contract language that "any dispute" shall be "exclusively" resolved through arbitration, but the *Reed Elsevier* contract language similarly states that "any controversy . . . will be resolved" through arbitration.  734 F.3d at 599.  The clauses are materially identical.

Defendant further argues that "the agreement incorporates the AAA rules on employment disputes which include Rule 6: 'The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement' . . . and '[t]he arbitrator may rule on [objections to the arbitrability of a claim] as a preliminary matter or as

10

part of the final award.'" Def.'s Resp. to Pl.'s Mot. for Summ. J., Dkt. # 13, at 8. This argument is unavailing, as the agreement at issue in *Reed Elsevier* incorporated the AAA rules on commercial disputes, which contain the *exact same* jurisdiction rules as the employment rules that Defendant relies on here. *Compare* AAA Employment Arbitration Rules and Mediation Procedures, Section 6, amended and effective November 1, 2009, *available at* https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362., *with* AAA Commercial Arbitration Rules and Mediation Procedures, Section 7, amended and effective November 1, 2009, available at https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased.

Accordingly, the Court finds that *Reed Elsevier* dictates the outcome of this issue, and finds that the Court is the proper body to determine class arbitrability of the parties' Agreement. The Court now turns to that issue.

**C.     The Agreement Does Not Provide for Class Arbitrability**

The analysis of whether Defendant is entitled to class arbitration based on the Agreement is largely the same as the analysis of whether the Agreement assigned the decision of class arbitrability to the arbitrator as discussed above. In its decision, the *Reed Elsevier* court reasoned:

> The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it. A second reason, as the district court correctly observed, is that the

11

clause limits its scope to claims "arising from or in connection with *this Order*," as opposed to other customers' orders.

*Reed Elsevier* 734 F.3d at 599. Likewise the same two arguments apply here. The arbitration clause here does not make any mention of classwide arbitration, and it limits its scope as to claims "arising out of or in connection with any aspect of *this Agreement*," as opposed to any other employees' agreements. Employment Agreement, Dkt. # 9, Ex. A, at 4 (emphasis added); see also *Reed Elsevier, Inc. v. Crockett*, No. 3:10CV248, 2012 WL 604305, at *10 (S.D. Ohio Feb. 24, 2012) ("Quite simply, whether any member of either class the Defendants seek to represent . . . has been harmed by Plaintiff's alleged [wrongful conduct] does not arise out of nor is it in connection with the Order and the Agreement between Plaintiff and Defendants."). Just as in *Reed Elsevier*, this contract is silent as to class arbitrability. Defendant maintains that "[i]f the parties' intent cannot be determined from the language of the agreement, and its silence on the issue of classwide arbitration creates an ambiguity, the remedy is not summary judgment." Def.'s Resp. to Pl.'s Mot. for Summ. J., Dkt. # 13, at 11. But this assertion is directly foreclosed by *Reed Elsevier* itself:

> [The Defendant] also responds that the agreement does not expressly exclude the possibility of classwide arbitration, which is true enough. But the agreement does not include it either, which is what the agreement needs to do in order for us to force that momentous consequence upon the parties here.

*Reed Elsevier*, 734 F.3d at 600. Defendant has failed to identify any material distinction between *Reed Elsevier* and this case, and accordingly, the Court's conclusion must be that of the *Reed Elsevier* court: "[a]n implicit agreement to authorize class-action arbitration should not be inferred solely from the fact of the parties' agreement to arbitrate," and accordingly, "[t]he agreement in this case does not provide for classwide arbitration." *Id.* (internal quotation marks and citations omitted).

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. # 11) is **GRANTED**.

IT IS FURTHER ORDERED that Defendant is enjoined from pursuing claims in arbitration on behalf of any absent individual or purported class arising out of the events giving rise to this suit, whether in the AAA arbitration already filed or in any other arbitration forum.

**IT IS SO ORDERED.**

Dated: December 10, 2015          s/Gerald E. Rosen
                                  Chief Judge, United States District Court

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 10, 2015, by electronic and/or ordinary mail.

                                    s/Julie Owens
                                    Case Manager, (313) 234-5135